**Thomas v. Emery Industries, Inc.**
*[Cite as 7 AOA 27]*

*Case No. C-890400*
*Hamilton County, (1st)*
*Decided September 26, 1990*

Stephen S. Mazzei, Steven M. Feldmann, and Martin M. Young, Young, Reverman & Napier Co., L.P.A., 1014 Vine Street, Suite 2400, Cincinnati, Ohio 45202, for Plaintiff-Appellant.

Carl Stitch, Dinsmore & Shohl, 2100 Fountain Square Plaza, 511 Walnut Street, Cincinnati, Ohio 45202, for Defendant-Appellee.

Per Curiam.

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the briefs and the argument of counsel.

Plaintiff-appellant, Linda Thomas, appeals from the summary judgment granted by the Hamilton County Court of Common Pleas in favor of the defendant-appellee, Emery Industries, Inc., a self-insured employer under Ohio's workers' compensation system, in an administrative appeal from the denial of appellant's motion to amend her workers' compensation claim. For the reasons that follow, we reverse the trial court's judgment and remand for further proceedings.

The record discloses that on July 5, 1981, appellant suffered a work-related injury to the great toe of her left foot while in the appellee's employ.[1] The injury caused appellant to miss work for approximately six months.

Appellant began treatment with Dr. Kremchek on the date of the injury and continued treatment with him until January 1982. The treatment included the use of crutches. According to appellant, in approximately January 1982, Dr. Kremchek took her off the crutches and approved her return to work. Appellant testified during her deposition that she walked with a limp without the aid of the crutches, and that she reported this fact to Dr. Kremchek, who allegedly responded that there was nothing more he could do for appellant. T.d. 16, at 31-32.

It was also approximately in January 1982 when appellant began to experience pain in her back. Appellant acknowledged during her deposition that she suspected, but did not confirm, that her limp might be the cause of her back pain.

On April 1, 1983, appellant began treatment with David H. Gillis, M.D. Appellant testified that Dr. Gillis told her, at that time, that her back pain "*** was coming from the way [appellant was] walking, and [appellant needed] to learn how to walk right so that *** [appellant would not] have pressure on [her] back." T.d. 16, at 33.[2] As of September 26, 1988, appellant had been seen by Dr. Gillis on a monthly basis. T.d. 7, at 19.

During his deposition, Dr. Gillis testified that appellant's primary complaint in April 1983 was pain in the great toe of her foot that radiated into the area of appellant's thigh. Further, appellant complained that she could not walk on her full foot. T.d. 17, at 16. Dr. Gillis's records do not reflect that appellant walked with an abnormal gait in April 1983. T.d. 17, at 18. However, sometime during the spring of 1983, Dr. Gillis submitted a C-19 "Request for Authorization" form to the Ohio Bureau of Workers' Compensation ("Bureau") requesting a back-support device. The form, which referred to claim number 756631-22 and stated that the claimant was being treated for a left-foot strain and tendonitis, was received by the Bureau on May 31, 1983.

In response to requests of the Bureau's hearing officer for clarification of how the back-support request was related to her foot injury, as communicated through appellant's attorney, Dr. Gillis responded, in a letter dated October 10, 1983, and addressed to appellant's attorney, that:

"Apparently there has been a misunderstanding in regards a back condition in the case of [appellant]. However, in reviewing the past C-19 request I have found that a back support *** [has] been requested on this lady's left extremity. This back support request obviously may have been a personal request made to one of my staff members who have written this down without consulting me. *** Perhaps Ms. Thomas is now having some lower back problems (which I have not discussed with her personally). This back problem can be related

indirectly to abnormal gait as a result of her foot injury." T.d. 17, Ex. 4.

Dr. Gillis's records also reflect that on October 7, 1983, appellant was working and that her back was "okay." T.d. 17, at 24.[3] However, Dr. Gillis further testified that he subsequently witnessed appellant walking with an abnormal gait. T.d. 17, at 19. In a letter dated November 18, 1983, Dr. Gillis again wrote to appellant's attorney, referencing her claim number and setting forth the history of his treatment of her. The letter further stated: "As a result of this foot and nerve injury she has developed an irregular gait which has aggravated her low back and caused her to have low back pain. Therefore, I have requested a lumbar corsette to try to alleviate some of this pain." T.d. 17, Ex. 4. This letter was forwarded to the Bureau, where it was received on November 21, 1983.

In October 15, 1985, more than two years after appellant had initially experienced the back pain and had consulted Drs. Kremchek and Gillis, appellant filed with the Industrial Commission of Ohio a motion to amend her claim to include the additional condition of back or lumbar strain. The motion was denied and appellant appealed to the Hamilton County Court of Common Pleas pursuant to R.C. 4123.519. Upon the motion of the appellee, the court granted summary judgment in favor of the appellee for the reason that appellant's motion was not timely filed under R.C. 4123.84.

R.C. 4123.84 establishes a two-year limitation period in workers' compensation cases, providing, in pertinent part, that:

"(A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death.

"* * *

"(3) In the event the employer has elected to pay compensation or benefits directly, one of the following has occurred:

"(a) Written notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau[.]

"* * *

"The commission has continuing jurisdiction as set forth in section 4123.52 of the Revised Code over a claim which meets the requirement of this section, including jurisdiction to award compensation or benefits for loss or impairment of bodily functions developing in a part or parts of the body not specified pursuant to division

(A)(1) of this section, if the commission finds that the loss or impairment of bodily functions was due to and a result of or a residual of the injury to one of the parts of the body set forth in the written notice filed pursuant to division (A)(1) of this section."

The Supreme Court of Ohio has construed R.C. 4123.84 to require a claimant to file a motion for an additional allowance within two years of the time the claimant knew or should have known of the additional claim. *Clementi v. Wean United, Inc.* (1988), 39 Ohio St. 3d 342, 530 N.E.2d 909, syllabus; *Edwards v. AT&T Technologies, Inc.* (1989), 42 Ohio St. 3d 119, 537 N.E.2d 1305. A motion for an additional allowance, however, need not be made on a particular form or be submitted directly by the injured employee in order to satisfy the jurisdictional requirements of R.C. 4123.84. In *Mewhorter v. Ex-Cell-O Corp.* (1986), 23 Ohio St. 3d 13, 490 N.E. 2d 610, syllabus, the Supreme Court of Ohio held that "notice of a claim by a third party to the Bureau of Workers' Compensation referring to a prior claim, and filed within two years of the occurrence of the injury underlying such prior claim, gives the court jurisdiction over the subsequent claim." The Court in *Me-whorter* considered R.C. 4123.512(A); which provides that information that an injury has occurred, when received by the administrator of the bureau, shall be considered an application for compensation under R.C. 4123.84, and read that statute in pari materia with R.C. 4123.84. R.C. 4123.512(A) also requires the administrator to notify the claimant's employer of "the claim and of the facts alleged therein." The Court in *Mewhorter* found, under the liberal interpretation given R.C. 4123.84, that the information submitted by the claimant's physician, consisting of the physician's C-19 fee bill and attached medical reports, was sufficient notice of the claim to satisfy the requirements of R.C. 4123.84.

In the case before us, appellant argues that her physician's C-19 Request for Authorization and letter of November 18, 1983, were sufficient to satisfy the requirements of R.C. 4123.84 and *Mewhorter, supra*. Assuming, for purposes of argument only, that she knew or should have known by January 1982 of her additional "flow-through" claim for back injury that eventually resulted from her earlier injury when her crutches were discarded, appellant claims that the November 2, 1983, letter, coupled with the

previous C-9 request for authorization, provided timely notice of her claim. We agree.

The appellee attempts to distinguish *Mewhorter, supra,* from the case *sub judice* by pointing out that in *Mewhorter* the documents had been sent first to the claimant's employer and then were forwarded to the bureau administrator, but that in this case there is nothing in the record indicating that her employer received notice of the additional claim, the information having been sent directly to the administrator. We do not believe the distinction to be of consequence in this case, however. The Court in *Mewhorter* apparently found it sufficient that the claim had been sent to the Bureau, having read R.C. 4123.512 *in pari materia* with R.C. 4123.84.

Although the Court noted in *Mewhorter* that the employer had received the information first, the decision's holding, summarized in the syllabus quoted above, omits any reference to the fact that the claimant submitted the information to the employer and clearly does not make such a submission a jurisdictional prerequisite. We have already noted that the administrator of the Bureau is required by statute to forward, such information to the employer. We also note that R.C. 4123.84(A)(3)(a), relating to self-insuring employers, only requires that notice be sent by the employee "to the commission or bureau," and not to the employer. We therefore find appel-lant's assignment of error to be well taken. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings in accordance with this decision and the law.

SHANNON, P.J., KLUSMEIER and HILDEBRANDT, J.J.

---

[1] As of September 19, 1988, appellant was still employed by the appellee.

[2] Appellant did not consult with any other physician concerning her foot or back from January 1982 to January 1983. The record does disclose that appellant was treated for a neck injury by another physician for approximately six months as a result of a June 1982 automobile accident.

[3] Dr. Gillis explained during his deposition that, pursuant to workers' compensation rules, he focused his concerns upon appellant's foot because that was the only injury for which she had made a claim. T.D. 24.