**McCALLISTER, Appellant,**

v.

**CITY OF PORTSMOUTH et al., Appellees.**

[Cite as *McCallister v. Portsmouth* (1996), 109 Ohio App.3d 807.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 95CA2341.

Decided March 14, 1996.

*Dwight O. Bailey,* for appellant.

*William K. Shaw, Jr.,* Portsmouth City Solicitor, for appellee city of Portsmouth.

---

STEPHENSON, Judge.

This is an appeal from a grant of summary judgment entered by the Scioto County Common Pleas Court in favor of the city of Portsmouth, John Oliver, City Health Commissioner, City Board of Health and Department of Health.[1] Appellant, Joan McCallister, assigns the following errors for our review:

"1.  The appellees/defendants are not immune from liability for the actions contained in plaintiff's complaint herein.

"2.  Summary judgment was improper in that material issues of fact existed.

"3.  Appellees/defendants negligently breached their duties owed to appellant/plaintiff and are liable for the damages suffered by her.

"4.  Appellees/defendants' actions violated appellant/plaintiff's constitutional rights.

"5.  Appellees/defendants' actions may constitute 'intentional conduct.' "

The record reveals the following facts which are pertinent to this appeal. Appellant was the legal title holder of an apartment building in Portsmouth, Ohio. She agreed to sell this property to a Mr. Esham under a land installment

---

1.  The city of Portsmouth was the only appellee to make an appearance in this appeal.

contract. Eventually, Esham defaulted, and appellant foreclosed by filing a complaint against him. On January 3, 1989, the appellant obtained an injunction and temporary restraining order against Esham that gave her the authority to inspect and take necessary action to protect the premises.

On January 5, 1989, appellant was contacted by a Mr. May, a sanitarian who worked for the Portsmouth Health Department and who informed her that the property was condemned. Appellant saw a notice posted on the property which advised her of her right to appeal under the city ordinances. Appellant claims that at that time she requested that the premises be "sealed" and that all tenants be told to leave immediately. May did not order the tenants to vacate the building immediately. Appellant claims that she was not able to seal the building until January 20, 1989. She further alleges that during the time period when the building was not sealed, her property was damaged by vandalism, arson and theft. The building in question was subsequently demolished.

On June 27, 1990, appellant filed her complaint against appellees, alleging violations of the codified ordinances of the city of Portsmouth, negligence, and intentional violation of her constitutional and statutory rights to due process. Essentially, appellant claims that appellees prevented her from securing and sealing the property and, therefore, appellees were liable for the property damage which resulted from the vandalism, arson and theft of property which occurred in the time period after the condemnation but before the property was sealed. Additionally, appellant has alleged that she was delayed by the city prosecutor in pursuing protection of her property.

Appellees moved for summary judgment on March 7, 1994. Appellant responded to this motion. The trial court granted summary judgment to appellees on February 8, 1995. This appeal followed.

While appellant has set out five different assignments of error, the sole issue before this court is whether the trial court erred in granting summary judgment for the appellees. Therefore, we will first set out the standards for summary judgment. Summary judgment may be granted, according to Civ.R. 56(C), when:

"(1) [n]o genuine issue as to material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

The party moving for summary judgment bears the initial burden of showing there is no genuine issue as to material fact. *Harless v. Willis Day Warehousing*

*Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party's summary judgment motion then "forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

An order granting a motion for summary judgment will be upheld where, construing the evidence in the most favorable light for the nonmoving party, the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 63 O.O.2d 119, 296 N.E.2d 266. An appellate court therefore applies a *de novo* standard on review. See *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199.

■ The appellee contends that it is not liable to the appellant because of the sovereign immunity granted to it in R.C. Chapter 2744. First, we find that the appellee is a "political subdivision" under the statute. R.C. 2744.01(F). Our next inquiry is whether the act of condemning a building is a governmental or proprietary function. R.C. 2744.01(C) states:

"(C)(1) 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

" * * *

"(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

"(2) A 'governmental function' includes, but is not limited to, the following:

" * * *

"(p) The provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures[.]"

Our review of the definitions of governmental and proprietary functions leads us to the conclusion that the act of condemning a building is indeed a governmental function. Condemning buildings promotes health and welfare, since citizens are prevented from dwelling in unsafe buildings. Also, the process of condemnation is necessary to enforce building and sanitation codes. Finally, we note that

the act of condemnation is not customarily engaged in by nongovernmental persons.

R.C. 2744.02(A)(1) sets forth the following regarding a political subdivision's liability in performing a governmental function:

"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

Appellant, however, submits that an exception set out in R.C. 2744.09(E) applies to her claims. R.C. 2744.09 states:

"This chapter does not apply to, and shall not be construed to apply to, the following:

" * * *

"(E) Civil claims based upon alleged violations of the constitution or statutes of the United States * * *."

It is plain from a reading of the statutes that appellees are immune from any claims appellant has against them which are tort claims or claims under the Constitution or statutes of the state of Ohio. Further, appellees are also immune from any tort claims arising from appellant's allegation that the city prosecutor purposely delayed appellant's efforts to protect her property, since prosecutorial functions are governmental functions. R.C. 2744.01(C)(2)(f).

Appellant also claims that the appellees should be found liable for not following the city's own ordinance in regard to condemnation procedures. Portsmouth City Ordinance 1311.01 states that when a building is condemned by the board of health, the building should be vacated immediately. Appellant alleges that appellees did not order that the premises be vacated at the time of the condemnation. However, we note that, in general, a city is not liable for not conforming to its own ordinances. See *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, paragraph one of the syllabus. Therefore, we find, as a matter of law, that appellee city cannot be held liable for not following its own procedures in regard to the condemnation process.

We agree with appellant, however, that any claims she has made under the United States Constitution or federal statutes would not be barred by R.C. Chapter 2744. But we note that the appellant failed to submit any evidence with her response to the appellees' motion for summary judgment to carry her burden of proof regarding these claims. There was no evidence in the record that the

appellees prevented the appellant from securing her property. Therefore, the appellant would have had to submit evidence of such acts under Civ.R. 56(C) to show that she could carry her burden of proving state action to sustain her constitutional claims and federal statutory claims in order to have these claims survive summary judgment. See *Wing, supra.* Since appellant failed to submit any evidence showing that the appellees prevented her from securing her property, summary judgment for the appellees on appellant's federal constitutional and statutory claims was appropriate.

Accordingly, we find that the trial court did not err in granting summary judgment to the appellees. All of the appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and KLINE, J., concur.