OPINION
This is an accelerated appeal taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Kathleen Kovatch, appeals from the trial court's grant of summary judgment in an underinsurance action stemming from an automobile accident.
On November 21, 1995, appellant was a passenger in a vehicle that was owned and operated by her daughter, Michelle Kovatch. While in transit on State Route 208 in Pennsylvania, Kovatch's automobile was involved in a head-on collision with a vehicle being driven by Melanie Measel ("Measel"). The collision was caused by the negligence of Measel. Appellant sustained injuries as a result of the accident.
Measel had an insurance policy with State Farm Insurance Company with policy limits of $25,000 per person and $50,000 per accident. State Farm paid $25,000 to appellant in settlement of her claim against the tortfeasor, Measel.
Michelle Kovatch had an automobile insurance policy through Aetna Casualty Surety Company. The Aetna policy established underinsured motorist ("UIM") coverage limits of $50,000 per person and $100,000 per accident. Appellant maintained an automobile insurance policy with appellee, Progressive Insurance Company ("Progressive"). The UIM coverage limits in the Progressive policy were also $50,000/100,000.
Upon receiving the full $25,000 from State Farm, appellant had exhausted the monetary recovery allowed under the tortfeasor's policy. According to appellant, this amount was not sufficient to compensate her fully for the injuries she sustained in the accident. Consequently, appellant began to pursue UIM benefits from Aetna and Progressive.
After her formal claims for UIM benefits were not approved for payment by Aetna and Progressive, appellant filed a complaint in the trial court on June 24, 1997. The complaint named both insurance companies as defendants. In this action, appellant sought $50,000 from Aetna in UIM benefits, and an identical amount from Progressive for breach of contract based on the UIM provisions contained in the insurance policy. Subsequently, appellant dismissed her UIM claim against Aetna after reaching a settlement with the company in the amount of $25,000.
Progressive filed an answer on August 22, 1997. Included in the answer was a counterclaim in which Progressive sought a declaratory judgment to the effect that appellant was not entitled to UIM benefits under her policy with the company.
Following time for discovery, appellant filed a motion for partial summary judgment. In this motion, appellant requested that the trial court rule that she was entitled as a matter of law to UIM benefits under the language of her policy with Progressive as it was written. Appellant sought a trial solely on the issue of damages.
Progressive responded with its own motion for summary judgment with regard to its counterclaim against appellant. Pursuant to this motion, the company asked the trial court to declare that appellant was not entitled to UIM coverage under her Progressive policy because she had previously recovered an amount of money that was equal to the UIM coverage afforded by the policy. Therefore, Progressive argued that it was entitled to judgment as a matter of law per the operation of R.C. 3937.18.
On April 2, 1998, the trial court granted Progressive's motion for summary judgment, while concomitantly denying appellant's motion for partial summary judgment. In doing so, the trial court expressly agreed with the legal reasoning adopted by Progressive in its motion.
From this judgment, appellant filed a timely notice of appeal with this court. She now asserts the following assignment of error:
 "The trial court erred to the prejudice of plaintiff by denying plaintiff's motion for partial summary judgment and granting summary judgment to defendant Progressive."
Civ.R. 56(C) sets forth the standard for addressing a motion for summary judgment. In order to prevail, the moving party must establish that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmovant. Civ.R. 56(C); Leibreich v. A.J.Refrigeration, Inc. (1993), 67 Ohio St.3d 266, 268;Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64,65-66; Lindquist v. Dairy Mart/Convenience Stores ofOhio, Inc. (Nov. 14, 1997), Ashtabula App. No. 97-A-0015, unreported, at 6, 1997 Ohio App. LEXIS 5124. An appellate court applies a de novo standard of review when determining whether a trial court properly granted summary judgment. McCallister v. Portsmouth (1996),109 Ohio App.3d 807, 810; Burkholder v. Straughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported, at 2, 1998 WL 553623.
In the case sub judice, appellant raises three issues with respect to why the trial court erred in granting summary judgment in favor of Progressive. The first issue raised by appellant concerns the monies she has already received. It is uncontroverted that appellant settled her claim with State Farm for $25,000. As the insurance company for the tortfeasor, State Farm was primarily liable for compensating appellant for her injuries arising from the traffic accident caused by Measel. The $25,000 represented the bodily injury limit established by Measel's policy with State Farm.
Because $25,000 did not fully compensate appellant for her injuries, she sought UIM benefits from her daughter's insurer and her own insurance company. It is undisputed that Aetna settled with appellant for $25,000 in UIM benefits because she was a passenger in Michelle Kovatch's automobile when she was injured. Thus, the parties were in agreement that appellant received a combined total of $50,000 from State Farm and Aetna.
Appellant acknowledges that her own policy with Progressive specifically limits UIM coverage to $50,000 per person. Despite the fact that she has already received $50,000 in total payments, appellant claims that only the $25,000 from State Farm, the tortfeasor's insurer, should be applied toward the $50,000 cap on UIM benefits established by her policy with Progressive. In other words, appellant asserts that the $25,000 UIM payment from Aetna, her daughter's insurer, should not be counted toward the $50,000 policy limit.
R.C. 3937.18 governs underinsured motorist coverage. R.C.3937.18(A)(2) provides:
 "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.)
The statutory language is unambiguous. UIM coverage is defined as providing protection to an insured where the limits of coverage available for payment to the insured under all bodily injury insurance policies covering persons liable to the insured are less than the limits of the insured's UIM coverage. UIM coverage is not excess insurance. It is only provided to afford the insured protection which is not greater than that which is available under the insured's UIM coverage. The policy limits of UIM coverage are to be reduced by those amounts available for payment under all applicable bodily injury insurance policies covering persons liable to the insured.
Appellant contends that the phrase "persons liable to the insured" refers only to the tortfeasor. From appellant's perspective, therefore, only the $25,000 from Measel's policy with State Farm should be offset against the limits of her UIM coverage with Progressive. In other words, the $25,000 paid by Aetna should not be offset because Michelle Kovatch was not a person who was "liable" to appellant.
As an initial observation, it should be noted that if this court were to accept appellant's position, it would amount to the stacking of the UIM coverage provided for by the Aetna and Progressive policies. In essence, appellant is attempting to recover UIM benefits under her policy with Progressive on top of and in addition to the UIM benefits she has already garnered from her daughter's policy with Aetna. As will be discussed infra, appellant's policy with Progressive contains an anti-stacking clause which expressly prohibits this type of recovery.
Beyond this, we disagree with appellant's interpretation of R.C. 3937.18(A)(2). The statute manifests a clear intent on the part of the General Assembly to limit the amount of UIM benefits to that which is available under the insured's policy. In this case, appellant's policy with Progressive contained an express limitation of $50,000 per person in UIM benefits. It is uncontroverted that appellant received this amount, to wit: $25,000 from State Farm and $25,000 from Aetna.
The phrase "persons liable to the insured" as used in R.C.3937.18(A)(2) is broad enough to encompass all persons who are liable to the insured. It does not distinguish between tort and contractual liability. As a result, the category of liable persons can include both those who are liable in contract, as well as those who may be liable in tort. In other words, the statute mandates that the policy limits of UIM coverage must be reduced by those amounts available for payment under all applicable bodily injury insurance policies, not just the amount of money that was recovered under the tortfeasor's policy.
In this case, Aetna decided to settle with appellant for $25,000 after she filed the complaint seeking UIM benefits. As the insurer of the vehicle in which appellant was injured, Aetna must have recognized its potential contractual liability to appellant as an insured passenger in the covered automobile.[1]
As a result of such liability, Aetna settled the claim for $25,000. This figure represented the difference between the UIM limit set forth in Kovatch's policy and the amount already paid by State Farm pursuant to Measel's policy.
Under R.C. 3937.18, the trial court correctly ruled that the policy limits of appellant's UIM coverage had to be offset by those amounts paid under all applicable bodily injury insurance policies, not just the sum of money recovered by appellant under the tortfeasor's policy. The first issue raised by appellant is not well-founded.
In the second issue, appellant argues that the anti-stacking clause and the "other insurance" clause in her policy with Progressive are in direct contravention to each other. The anti-stacking clause reads: "An insured person cannot stack coverages under this policy on top of coverages provided by other applicable insurance." The "other insurance" clause provides:
 "B. Subject to the above, if an insured person is injured while occupying any other vehicle and other similar coverage not provided by us applies, coverage under this Part IV applies:
 "1. as excess to any similar coverage which applies to the vehicle as primary coverage; but
 "2. only in the amount by which the Limit of Liability for this Part IV exceeds the primary coverage[.]"[2]
The anti-stacking clause states that coverage under appellant's Progressive policy can not be stacked on top of coverage provided "by other applicable insurance." Appellant argues that if UIM coverage offered by other insurance companies is deemed to fall into this category, then the "other insurance" clause would be rendered nugatory because it sets out a method for determining the respective liability of Progressive and another insurer who provides similar UIM coverage.
We disagree with appellant's analysis of these clauses. R.C.3937.18(G) expressly authorizes insurers to preclude the stacking of insurance policies. It provides:
 "(G) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section [i.e., uninsured and underinsured motorist coverage] * * * may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages, including but not limited to:
 "(1) Interfamily stacking, which is the aggregating of the limits of such coverages by the same person or two or more persons, whether family members or not, who are not members of the same household;
 "(2) Intrafamily stacking, which is the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household."
This language was specifically included by the General Assembly in the October 20, 1994 amendment of R.C. 3937.18 to supersede the effect of the Supreme Court of Ohio's holding in Savoie v. Grange Mut. Ins.Co. (1993), 67 Ohio St.3d 500. Thus, the anti-stacking provision in the Progressive policy was statutorily authorized.
Furthermore, despite appellant's assertion to the contrary, the aforementioned clauses do not contradict each other. The anti-stacking clause simply prohibits coverage under the Progressive policy from being applied to the insured without any regard to whether an offset might be appropriate given the existence of coverage under other applicable insurance. The function of the "other insurance" clause, meanwhile, is to indicate that the UIM coverage offered by Progressive is only secondary to any primary UIM coverage provided by another insurer up to the Limit of Liability set forth in Part IV of the Progressive policy (i.e., $50,000 per person). The two clauses are not in conflict.
The third and final issue raised by appellant is an alleged ambiguity in the "other insurance" clause. Specifically, appellant points out that the clause limits Progressive's UIM coverage to the amount by which its Limit of Liability exceeds any primary UIM coverage. In this context, appellant claims that the word "coverage" means the amount of UIM benefits actually paid by the primary insurer, not the primary insurer's corresponding limit of liability. From appellant's perspective, the Limit of Liability in the Progressive policy ($50,000) exceeded the amount of UIM benefits actually paid by Aetna ($25,000) as the primary insurer of Kovatch's vehicle, thereby entitling appellant to as much as $25,000 in additional UIM benefits.
This court has previously held that insurance contracts must be construed in accordance with the same rules of construction as other written contracts. Gillette v. St. Paul Guardian Ins. Co. (1996), 113 Ohio App.3d 564, 570, citing Universal UnderwritersIns. Co. v. Shuff (1981), 67 Ohio St.2d 172, 173. At the same time, even though the ordinary principles of contract law apply, a party can not enter into a contract which is contrary to law. A UIM provision, therefore, must be interpreted in light of the language of R.C. 3937.18 which governs such coverage.
When the "other insurance" clause in the present case is construed in the context of R.C. 3937.18, it renders the third issue meritless. The fact that the $50,000 Limit of Liability in the Progressive policy exceeded the $25,000 in primary UIM coverage paid by Aetna did not entitle appellant to additional UIM benefits because she had previously received an initial payment of $25,000 from State Farm. Thus, even assuming arguendo that appellant is correct in asserting that the word "coverage" in the Progressive "other insurance" clause refers to the actual dollar amount paid by the primary insurer, she would still not be entitled to any additional UIM benefits from Progressive because her policy limit for such benefits was fixed at $50,000 per person.
The trial court did not err by granting summary judgment to Progressive. No genuine issue of material fact needed to be litigated in the case at bar. Given the operation of R.C. 3937.18
and the limits of liability set forth in appellant's insurance policy, Progressive was entitled to judgment as a matter of law.
Based on the foregoing analysis, the assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
 __________________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., O'NEILL, J., concur.
[1] There is no copy of Michelle Kovatch's automobile insurance policy with Aetna in the record before this court. Thus, we can only assume that appellant constituted an insured person under the Aetna policy since she was a passenger in the covered automobile at the time of the accident. Appellant, in other words, was essentially a third-party beneficiary to the contract between her daughter and Aetna.
[2] Part IV in appellant's policy with Progressive governs both uninsured and underinsured motorist coverage.